**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

_____

In re:

Allison Miller Waterbury,

        Debtor.

_____

Allison Miller Waterbury,

        Plaintiff,

v.

American University of Antigua,

        Defendant.

_____

Bky. Case No. 18-42930
Adv. Case No.

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS**

Allison Miller Waterbury, for her Complaint in this adversary proceeding, states and alleges as follows:

**GENERAL ALLEGATIONS**

1. This adversary proceeding is brought by Plaintiff to determine the dischargeability of consumer education loans owed to Defendant by the Plaintiff pursuant to 11 U.S.C. Section 523(a)(8).

2. The Court has jurisdiction over this proceeding according to 28 U.S.C. Sections 157 and 1334, and Fed. R. Bankr. P. 7001. This is a core proceeding under 28 U.S.C. Section 157

1

(b)(2)(I).

3. Plaintiff is an individual residing at 1025 Yuma Lane N., Plymouth, Minnesota 55447.

4. Plaintiff's bankruptcy case was commenced under Chapter 7 of the United States Bankruptcy Code on September 16, 2018, as case BKY 18-42930. Said case is now pending in this court. Discharge was granted December 12, 2018.

5. Defendant American University of Antigua is a for-profit medical school in the Caribbean with a mailing address of University Park, Jabberwock Beach Road, PO Box W1451, Coolidge, Antigua. It also has an office in the State of New York, with a mailing address of American University of Antigua, c/o Manipal Education Americas, LLC, attn: Prabhu Marudheri, One Battery Park Plaza, 33rd Floor, New York, NY 10004.

6. Defendant American University of Antigua is the owner, guarantor, and holder of seven (7) private consumer education loans of the Debtor, which obligations are unsecured and have a balance of $291,007.21 as of January 24, 2019. The breakdown of the loans are as follows: loan *1002 $38,621.03; *1003 $37,489.15; *1010 $38,671.48; *1001 $55,786.36; *1008 $39,692.97; *1009 $40,851.26; and, *1007 $39,894.96. These loans are currently being serviced by American Education Services.

7. In addition to the private consumer education loans described above, Plaintiff obtained federally insured student loans to attend other institutions to finance her education not related

2

to American University of Antigua. The outstanding balance of these loans at the date of the chapter 7 filing were $140,291.00. These loans are broken down as follows: FFEL consolidated student loan in the amount of $50,720.00; and, seven (7) Direct Stafford student loans in the amount of $89,571.00.

## STATEMENT OF FACTS

**A.    Section 523(a)(8) Of The Bankruptcy Code.**

8.  In 1978, there was a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year nondischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts.

9.  Although the rationale behind section 523(a)(8) has been questioned by many scholars,[1] the justification for excepting federal student loan debt from discharge was not without some

---

[1] *See* Rafel I. Pardo & Michelle R. Lacey, THE REAL STUDENT-LOAN SCANDAL: UNDUE HARDSHIP DISCHARGE LITIGATION, 83 Am. Bankr. L.J. 179, 181 (2009) ("Tragically, Congress disregarded empirical evidence from a General Accounting Office study which found that less than one percent of all federally insured and guaranteed student loans were discharged in bankruptcy. Simply put, the discharge of student loans in bankruptcy was too minor to threaten the economic viability of the student-loan program.").

merit. In fact, in the age of soaring tuition costs, the original justification has become more compelling. Section 523(a)(8) serves not only to protect the taxpayers, but also to preserve the solvency of student lending programs for the next generation of students.

10. In 2005, after extensive lobbying, private education lenders and debt collectors won *limited* protection in bankruptcy *for some of their educational loan products*.[2] Specifically, Congress limited protection for private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools for tuition, room, board, and books("Qualified Education Loans").[3]

11. But commercial lenders were not satisfied with the origination volume of Qualified Education Loans. The paperwork was burdensome, schools would not certify sums in excess of tuition, and the Title IV accreditation requirement prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation. Thereafter, lenders initiated new programs that lent money directly to students attending unaccredited schools (hereinafter, "Consumer Education Loans"). Consumer Education Loans were much easier to originate because they bypassed the certification requirements codified in the Higher Education

---

[2] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA").

[3] *In re Decena,* 2016 WL 1371031, at *6 (Bankr. E.D.N.Y. Apr. 4, 2016) ("[S]ection 523(a)(8)(B) excepts from discharge loans for attending an 'eligible educational institution,' recognition of which is dictated by the Federal School Codes List for the years 2004-05, which identify '[a]ll postsecondary schools that are currently eligible for Title IV aid.'").

Act. Because the schools were not Title IV-eligible, these loans were not and are not Qualified Education Loans. Like student credit card debt, they are simply unsecured consumer debts and are discharged automatically upon entry of a discharge injunction.

### B. The Application Of Section 523(a)(8).

12. Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable. But private lenders were only given *qualified* protection in 2005 such that section 523(a)(8)(B) only excepts *some* private education loans from discharge.[4] This created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge.

13. This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section

---

[4] 11 U.S.C. § 523(a)(8)(B).

523(a).[5] Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

14. If a creditor believes that a debt they hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8).[6] Once the creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship."[7] Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.[8] Accordingly, it is left to

---

[5] 11 U.S.C.A. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

[6] *Owens v. Owens,* 155 F. App'x 42, 43 (2d Cir. 2005) ("It is the creditor seeking an exception to discharge who bears the burden of proving facts coming within one of the § 523 exceptions."); *In re Renshaw,* 222 F.3d 82, 86 (2d Cir. 2000) ("Because bankruptcy is both a right of the debtor, and a remedy for the creditor . . . . a proper balancing of those competing interests requires the creditor to prove by a preponderance of the evidence that its claim is one that is not dischargeable."); *In re Metcha,* 310 F.3d 308, 311 (3d. Cir 2002) (stating that creditor opposing discharge has burden of establishing that the obligation is an educational loan under section 523(a)(8)).

[7] *See In re Bronsdon,* 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) ("The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8). Once the showing is made, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependents 'undue hardship.'").

[8] *In re Meyer,* No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("For the reasons stated in the debtor's motions and the *Decena* decision, the Court finds that the debtor's student loans were discharged on September 16, 2015, because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student loan accounts after the date of the debtor's discharge.").

the creditors to determine whether their particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

### C. Plaintiff's Background and Procedural History

15. Plaintiff attended American University of Antigua College of Medicine between 2008 and 2012. During that time, Plaintiff incurred seven (7) consumer education loans as set forth at paragraph 6 of this Complaint. These loans were used for tuition expenses for medical school at American University of Antigua College of Medicine. American University of Antigua College of Medicine was not a recognized institution under Title IV of the Higher Education Act as defined in 20 U.S.C. 1088 during those years, and thus was not Title IV accredited and not an eligible institution.

16. Plaintiff's Non-Qualified Education Loans were not excepted from discharge under Section 523(a)(8)(B).

17. Plaintiff is currently experiencing severe financial hardship.

18. Plaintiff is 42 years old, and she has health issues which restricts and limits her employability and earning capacity.

19. Despite her best efforts, Plaintiff currently earns approximately $30,000 a year.

20. Plaintiff's income is insufficient to pay all of her monthly living expenses, and her consumer education loans held by Defendant have imposed an undue hardship upon her.

21. Plaintiff's monthly payment to service all her consumer education loans held by Defendant is $3,468.13 per month, which is more than she makes each month.

22. Plaintiff is currently paying her federal student loans a total of $10.00 per month for the next nine (9) months in a loan rehabilitation program and then she plans to enter into an Income Based Repayment (hereinafter "IBR") plan to pay based on her income. Plaintiff will be in this IBR plan for twenty-five (25) years. Plaintiff is not seeking discharge of her federal student loans and they are not part of this proceeding.

23. Plaintiff has made payments to the best of her ability over the years on both her private and federal student loans.

24. Plaintiff has acted in good faith to obtain employment, minimize expenditures, and maximize earnings and resources, and despite such efforts, Plaintiff is unable to make any payments towards her consumer education loans held by Defendant, and such obligations impose an undue hardship upon her.

25. Repayment of Plaintiff's consumer education loans would constitute an "undue hardship" under the totality of the circumstances test.

**COUNT ONE: DECLARATORY JUDGMENT**

26. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

27. Plaintiff requests declaratory judgment pursuant to 28 U.S.C. Section 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiff's Non-Qualified Loans are not non-dischargeable student loans or qualified education loans under 11 U.S.C. Section 523(a)(8), and were therefore discharged upon entry of the applicable discharge order.

28. Plaintiff requests declaratory judgment pursuant to 11 U.S.C. Section 523(a)(8) and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiff's consumer education loans held by Defendant are discharged because repayment would constitute an "undue hardship" under the totality of the circumstances test.

**WHEREFORE,** the Plaintiff requests that the Court:

1. Determine that Plaintiff's consumer education loans held by Defendant are not qualified educational loans as defined by 11 U.S.C. §523(a)(8) and were discharged upon entry of the discharge order.

2. Determine that payment of Plaintiff's consumer education loans held by Defendant would impose an undue hardship on the Plaintiff pursuant to 11 U.S.C. §523(a)(8).

3. Determine that the Plaintiff's consumer education loans held by Defendant were discharged in her bankruptcy proceeding.

4.   Grant such other relief as is just and equitable.


Dated: February 20, 2019     /e/ Michael K. Hoverson
                             Hoverson Law Offices,P.A.
                             By: Michael K. Hoverson
                             300 Union Plaza
                             333 Washington Ave. North
                             Minneapolis, MN 55401
                             (612) 349-2728
                             Attorney ID: 175948
                             Attorney for Plaintiff